C. L. WAGNER AND J. W. WAGGONER, DEFENDANT-APPELLANTS *v.* BREED O. MOUNGER, COMPLAINANT-APPELLEE

No. 43512 May 10, 1965 175 So. 2d 145

84

*Stratton & Jones,* Brookhaven, for appellant.

*Joe N. Pigott,* McComb, for appellee.

PATTERSON, J.

This suit was brought by the lessor of an oil and gas lease seeking its cancellation as against the lessee and his assignee for their failure to timely pay delay rentals or to commence drilling operations. From a decree of cancellation the defendants appeal. We affirm the decision of the chancellor.

I.

On November 20, 1958, C. L. Wagner obtained an oil and gas lease from Breed O. Mounger to an undivided one-sixteenth interest in and to the Northeast Quarter of Section 10, Township 1 North, Range 12 East, Walthall County, Mississippi. On the same day Wagner assigned one-half interest in this lease to J. W. Wag-

goner. The lease from Mounger to Wagner was filed for record on the land rolls of the county on November 21, 1958. The assignment to Waggoner was filed for record on September 20, 1962. The lease designates C. L. Wagner's address to be Pass Christian, Mississippi. The Tylertown Bank of Tylertown, Mississippi, was designated as the lessor's agent and depository for rental payments by the lease.

The first payment of delay rentals was made to the depository bank prior to the anniversary date of November 20, 1959, by J. W. Waggoner, Box 238, Pass Christian, Mississippi, and the bank issued its check to the lessor. A second rental payment was made to the depository bank on October 3, 1960, by Tom Anthony, Jr., Box 111, Gulfport, Mississippi, and the bank issued its check to the lessor. A third rental payment was made to the depository bank on October 16, 1961, by Tom Anthony, Jr. individually and doing business as Independent Minerals & Production Company, Box 362, Long Beach, Mississippi, and again the bank issued its check to the lessor.

The lessor was not personally aware as to who made these rental payments to the bank as the checks to him were those of the bank. However, a check of Independent Minerals & Production Company by Tom Anthony, Jr. in the sum of $500.51 was paid to the Tylertown Bank in July 1962 for delay rentals on other lands. One of the lessors in the lease on the other lands was Breed O. Mounger, appellee here. The bank forwarded its checks to Mounger and other lessors in payment of these rentals which they later had to recall as the check by Anthony for Independent Minerals & Production Company was returned due to insufficient funds for payment. This check remains unpaid.

On November 20, 1962, the fourth anniversary date of the lease, the check of T. W. Anthony, Jr., the same person as Tom Anthony, Jr., was received by the Tyler-

town Bank in payment of the delay rental which was then due if the lessee desired to exercise his option to extend the lease for the ensuing twelve months. This check came to the attention of the Vice President of the bank who advised Mr. Mounger the following day, November 21, 1962, that a check by T. W. Anthony, Jr. had been received for rental payment, whereupon Mounger inquired if the bank would be able to pay him his money on this check and was advised by the bank that due to the past experience with the check of Anthony they could not make payment on it unless Mounger would guarantee its payment by his indorsement. These terms were not acceptable to Mounger and he declined the check. The check of Anthony was thereupon forwarded for collection through normal banking channels and was paid in due time. Mounger was notified of the check being honored, but declined to accept payment for the alleged reason that the tender was by a stranger to the lease and the tender was not timely made.

## II.

The record reflects that oil and gas development in the Dexter field of Walthall County had moved to the northern and eastern boundaries of the lands in question and ultimately there was development and production on adjacent lands. The owners of the remaining fifteen-sixteenths lease interest in the premises in question, Chesley Pruet & Associates, had received a demand for offset drilling from their lessors. The owners of the fifteen-sixteenths leasehold interest felt that drilling operations were necessary in view of this demand and the terms of their lease, but were not inclined to do so as C. L. Wagner, the record owner of the outstanding one-sixteenth lease interest, could not be located so that he might be consulted as to participation in the drilling operations. Both Mounger and Pruet made efforts to reach Wagner. In June 1962 Mounger forwarded a

registered letter to Wagner at the address given in the lease, notifying him of the oil developments on lands adjacent to the lease and demanding compliance with his obligation in the lease. This letter was returned to the sender with the post office notation "Unable to Make Delivery, Addressee Out of Town." The letter was again forwarded to the same address and on July 14, 1962, it was again returned to the sender with post office notation "Unclaimed, Returned to Writer." Pruet also made extensive efforts during this time to contact Wagner to no avail. Under these circumstances Pruet obtained a permit to drill the lands in question and began drilling operations on October 25, 1962, with the one-sixteenth lease interest of Wagner and Waggoner outstanding and uncommitted to any cost of the well.

On November 27, 1962, J. W. Waggoner contacted Mounger by telephone and advised him of his assigned interest in the Wagner lease. During the course of this conversation Wagner's address was given as Box 293, Pass Christian, Mississippi. On this date Mounger mailed a letter to Wagner with return receipt requested to the address given by Waggoner. Neither the receipt nor the letter was ever returned to the addressor. A similar letter was sent to Waggoner at his address and the same was received. The substance of these letters was that the lessor considered the lease to have expired by its terms and a demand was made for a release therefrom.

The drilling operations of Pruet, which began in October 1962, and of which Wagner and Waggoner were completely unaware until after the anniversary date of the lease had passed, continued until January 24, 1963, when the well was completed as a producer. After the anniversary date of the lease, Mounger committed the one-sixteenth outstanding interest to the cost of drilling and production of the well, as he considered the lease to have terminated by its terms after the passage of the anniversary date.

The questions presented by this appeal are: (1) whether the oil, gas and mineral lease of November 20, 1958, continued in effect after such date by reason of payment or tender of delay rentals, (2) whether the lease continued in effect by reason of the drilling operations of Chesley Pruet Drilling Company on said land which began prior to November 20, 1962, and which continued until the well was successfully completed as a producer.

The first question presented is that of timely payment, and its determination depends upon the construction of Paragraph 5 of the lease which reads as follows:

> If operations for drilling are not commenced on said land or on acreage pooled therewith as above provided on or before one year from this date the lease shall then terminate as to both parties, unless on or before such anniversary date *Lessee shall pay or tender* to Lessor or to the credit of Lessor in Tylertown Bank of Tylertown, Mississippi (which bank and its successors are Lessor's agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or the rentals) the sum of Ten ........... and ...........
> No/100 Dollars ($10.00) (herein called rental), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rental may be made *by the check or draft of Lessee* mailed or delivered to Lessor or to said bank on or before such date of payment. (Emphasis added.)

■■ ■ This Court held in *Frost v. Gulf Oil Corp.*, 238 Miss. 775, 119 So. 2d 759 (1960), that the rules of construction of a mineral lease are generally the same as those employed to interpret other written instru-

ments. The plain unambiguous terms of the lease expressly provided that the payment of delay rentals was to be made by the lessee if he exercised his right to continue the lease in effect for an additional twelve months and since the payment or tender on November 20, 1962, was not made by such lessee, the tender of payment by Anthony, a stranger to the lease, was not payment as contemplated by the lease. The parties to the contract having restricted the payment of delay rentals to the lessee, we are of the opinion and so hold that the Court should not by unneeded construction enlarge the terms of the lease to include the check or draft of a stranger.

 The appellant next contends that the lessor is estopped from refusing the tender of November 20, 1962, upon the basis that it was made by a stranger to the lease. The reason asserted for this alleged estoppel is that the appellant had theretofore accepted a delay rental payment by J. W. Waggoner in 1959, a stranger to the lease whose interest had not been recorded at the time of such payment; that he had accepted a check in 1960 by Tom Anthony, Jr., a stranger to the lease; and had accepted a third rental payment check by Tom Anthony, Jr., individually and doing business as Independent Minerals & Production Company in 1961, this last payment also being by a stranger to the lease. We are of the opinion and so hold that the acceptance of these delay rentals did not constitute a waiver or estoppel by the lessor since he had no independent knowledge thereof and since the payments had been made to the Tylertown Bank, the designated agent and depository for the payment of delay rentals. The lessor's knowledge of these payments, if he is to be estopped by his course of conduct in accepting delay rentals, must be from the knowledge that would be imputed to him by the knowledge of his agent, the depository bank. The bank was designated as the lessor's

agent and as the depository for delay rental payments in the terms of the lease as follows:

> If operations for drilling are not commenced on said land or on acreage pooled therewith as above provided on or before one year from this date the lease shall then terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender to Lessor or to the credit of Lessor in Tylertown Bank at Tylertown, Mississippi, (which bank and its successors are Lessor's agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of land or the rentals) the sum of . . .

The depository bank, though doubtless the agent of the lessor, was an agent of limited authority with the right and duty only to accept delay rentals. It did not have the authority to waive a valuable right of the lessor. See 3 Williams & Meyers, Oil and Gas Law § 606.5, at 178 (1964), wherein in discussing the depository as lessor's agent, the text writer states:

> The depository does not have the authority which an agent would usually have to bind the lessor by acceptance of a late, inadequate or improper tender of payment. The depository lacks power to bind the lessor in any fashion not specifically authorized by the lease.

The text cites the case of *Dorman Farms Co. v. Stewart,* 157 Ark. 194, 247 S. W. 778 (1923). We hold, therefore, that the agent was authorized to accept the delay rentals only and since the agent could not have expressly waived a right of its principal in excess of its apparent authority, it could not by implication waive or estop its principal by a course of conduct which was in excess of its authority and in fact unknown to him. In the case of *Crowe v. Fotiades,* 224 Miss. 422, 443, 80 So. 2d 478 (1955), we held:

> The essential elements of estoppel are conduct and acts, language or silence, amounting to a representation of concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence.

And in *Gault v. Branton*, 222 Miss. 111, 75 So. 2d 439 (1954), we stated that a waiver is the intentional relinquishment of a known right. The appellee did not intentionally relinquish or waive any right as he did not have knowledge of the facts, and since he did not have this knowledge personally or through his agent, there could be no intent that the acts of his agent in accepting delay rental payments were to be relied upon by either Waggoner or Wagner, as both were fully informed as to the true facts and terms of the lease both as to the authority granted and that limited or withheld. Under the facts and circumstances as reflected by the record here we are of the opinion and so hold that the lessor was not estopped to decline the fourth payment of delay rental.

██ ██ We are also of the opinion that the second question presented, that the lease was perpetuated by drilling activities on the land by the owners of the fifteen-sixteenths lease interest, is not well taken as the one-sixteenth lessee and assignee were not aware that such drilling operations were under way on the anniversary date of the lease, November 20, 1962. Being unaware of these activities, they of course did not cooperate or participate in the drilling operations. The appellants contend, however, that since the drilling operations were upon the lands embraced in their lease that participation was not necessary by the lessee and his assignee, and in support of this contention they rely upon Paragraphs 2 and 5 of the lease as follows:

(2) Subject to the other provisions herein contained this lease shall be for a term of ten years from this date (called "primary term") and as long thereafter as oil, gas or other mineral *is produced from said land* or land with which *said land* is pooled hereunder.

(5) If operations for drilling are not *commenced on said land* * * *. (Emphasis added.)

Both parties to the suit have cited the case of *Earp v. Mid-Continent Petroleum Corp.*, 167 Okla. 86, 27 P. 2d 855, 91 A.L.R. 188 (1933), which they each contend is persuasive authority to their interest. This case was discussed and ultimately followed in the case of *Willson v. Superior Oil Co.*, 274 S. W. 2d 947 (Tex. Civ. App. 1954), where the *Earp* case was also cited by both parties as persuasive to their viewpoints and wherein it cited with approval the following statement from *Earp* supra:

There can be no serious question that when lessees holding under different leases from different lessors enter into an agreement to develop the common property, each agreeing to share in the expense of development and operation, that the development and production accomplished by them as a result of such agreement among themselves is as much the act of one as it is the act of the other and the discovery and production of oil operates as a compliance with the provision of the lease of each of the lessees co-operating in the development. Nor do we think that any particular form of agreement is essential to accomplish this result, it being sufficient if the lessee claiming the drilling operation as a compliance with the terms of his lease can rightfully say that the exploration and development of the premises is his act in whole or in part. However, in order to claim the act of drilling as his own it is obvious that there must be something more than a mere passive acquiescense in the drilling by another lessee under a

separate lease. This for the reason that the lessee of one cotenant is bound as a matter of law to acquiesce in such drilling so long as the same is not conducted in such a manner as to exclude him from exercising a similar right in connection with the same premises.

This case ultimately held that the drilling of the well there in question was the act of the lessor as well as the lessee since such joint operation was the result of an operating agreement between lessor and lessee. The more recent case of *Mattison v. Trotti*, 262 F. 2d 339 (5th Cir. 1959) also discusses and follows Earp *supra* and Willson *supra* as an authority for its holding that drilling operations necessary to keep a lease in force by the lessee of an undivided interest would have to be those of the lessee, and drilling by lessee of other undivided interest without any agreement or understanding by or between these concurrent lessees would not suffice to continue the lease in effect. This case dealt with an unless type lease as here, and due to its similarity we quote therefrom as follows:

No drilling was commenced during the first year but the required delay rental was paid on or before the anniversary date. During the second year of the primary term, drilling operations were commenced and a gas well was drilled not by lessee but by the Houston Oil Co., which was the owner of a lease covering other undivided interests in the tract. This well was not induced or procured by appellants, nor was it drilled under any agreement or understanding between Houston and appellants . . .

Appellants did not pay, agree to pay, or in any way contribute to the cost of the well. After the well was brought in, it was not produced but was shut in. No shut-in payments were made to appellee, nor did ap-

pellants pay the rental called for in the lease before the expiration of the second year.

In support of the judgment, appellee, pointing out that the lessees have not, as required by the lease, drilled on or produced oil from the land, nor have they paid the rentals required by the lease, but without furnishing or offering to furnish the consideration on which alone they obtained the lease, are seeking to claim the benefit of the Houston Oil well as a performance on their part of the consideration, urges upon us that they cannot in law do this, and the judgment must be affirmed.

. . . .

We find ourselves in complete agreement with appellee's primary contention. Appellants' reliance upon the claim that, because Sec. II of the lease, providing that the lease would remain in effect during the primary term "or as long thereafter as oil or gas or either of them is produced from said land", the lease must be held to be one in which the lessees are entitled to hold the lease without giving or paying any consideration therefor, will not at all do. Such a construction would be contrary not only to ordinary rules of construction of a written instrument for the purpose of ascertaining the intention of the parties, but also to the uniform holding of the Texas decisions that in an oil and gas lease, where there is no cash consideration paid, the drilling for and the production of oil or gas by the lessee is the prime consideration, and if not so stated in the lease will be read into it. We are of the opinion and so hold that the drilling operations of Pruet which were unknown to the appellants here and for which they did not pay, agree to pay, or in any way contribute to the cost of were not drilling operations of the lessee Wagner or his assignee, Waggoner, even though conducted on lands embraced in their lease, and that their lease was not kept in force thereby.

We are persuaded to this viewpoint by the cited cases and also by the following language of Paragraph 6 of the lease:

If prior to discovery of oil, gas or other mineral on said land or on acreage pooled therewith Lessee should drill a dry hole or holes thereon, or if after discovery of oil, gas or other mineral, the production thereof should cease from any cause, this lease shall *not terminate if Lessee* commences additional drilling or reworking operations within 60 days thereafter . . . . .

This clause specifies that the lessee has a right to continue the lease under the circumstances therein enumerated if he, the lessee, commences additional drilling or reworking operations within sixty days thereafter, thus indicating that the drilling operations in the first instance were intended to be by the lessee and not merely upon the lands covered by the lease, as surely the lessee would not have the right to commence an additional well if the first were not his own and neither would he have the right to rework the well of another.

We are of the opinion therefore that since the lessee neither made timely payments of the delay rentals nor commenced drilling operations on the leased premises or in any way contributed thereto, that the lease terminated by its own provisions.

Affirmed.

All Justices concur except *Jones and Smith, JJ.,* who took no part.