Kingdon R. HUGHES, Appellant,

v.

Conan CANTWELL and First National Bank in Dallas, Co-Trustees under the Will of H. F. Gibson, Deceased, Appellees.

No. 6479.

Court of Civil Appeals of Texas, El Paso.

Aug. 11, 1976.

Rehearing Denied Sept. 1, 1976.

Kerr, Fitz-Gerald & Kerr, William Monroe Kerr, Harris E. Kerr, Midland, for appellant.

Jackson, Walker, Winstead, Cantwell & Miller, A. W. Walker, Jr., Dallas, for appellees.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This case involves the interpretation of an oil and gas lease and related questions surrounding the "unless" clause thereof.

The trial Court sitting without a jury, held that the lease had terminated for failure to comply with the "unless" clause. We affirm.

Appellant Hughes leased from the Appellee a fractional mineral interest in Section 49, Block 34, H & TC Railway Company Survey, Ward County, Texas; the parties acted under the belief that the leased interest consisted of an undivided $\frac{1}{128}$th interest or a net five mineral acres of the 640-acre section. The lease, dated November 8, 1971, is in what may be termed a standard or the usual form, except for slight modification of a special warranty. It provided for a primary term of five years from November 8, 1971, and also provided for delay rentals of $1.00 per mineral acre. Hughes paid the delay rental for the period from November 8, 1972, to November 8, 1973. He did not pay the delay rental due for the period from November, 1973, to November, 1974. Atlantic Richfield, Lessee of the major undivided interest in the section, notified Hughes of its plans to drill a well on the section, and invited him to join in sharing the expense thereof. Hughes declined to join with Atlantic Richfield, and on April 14, 1973, Atlantic Richfield commenced the well on the property, which was completed as a rich producer on September 28, 1973.

As indicated, the trial Court held that the lease terminated on November 8, 1973, because of the failure of Hughes to pay the delay rental due. Hughes contends that the lease is still in effect because of the drilling of the well by Atlantic Richfield on the section. He contends that the "unless" clause of the lease is satisfied by Atlantic's actions. The clause provides:

"5. If operations for drilling are not commenced on said land or on acreage pooled therewith as above provided on or before one year from this date the lease shall then terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender to Lessor * * * *"

the rentals provided for by the lease. Appellant contends that the absence of the words "by the Lessee" after the word "commenced" in this Paragraph 5 of the lease will allow him to rely on the drilling and production of another to keep his lease alive. With this we are unable to agree.

We construe the contract as requiring that the Lessee must perform either directly or constructively as provided by the contract to keep it alive. In construing contractual obligations, it is the duty of the Court to ascertain the intention of the parties. In so doing, the instrument must be considered in its entirety. *Klein v. Humble Oil & Refining Co.*, 126 Tex. 450, 86 S.W.2d 1077 (1935); *Smith v. Liddell*, 367 S.W.2d 662 (Tex.1963).

Looking at the contract as a whole, we find that to obtain its benefits there are certain requirements set out for Lessee, and throughout the instrument he is named as the one to meet such requirements. For instance, he is named in Paragraph 3 where it says: "The royalties to be paid by Lessee are: * * *." And in Paragraph 4 it recites: "Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease, * * *." And in the disputed Paragraph 5 it says that the lease will terminate unless "Lessee shall pay or tender * * *." And in Paragraph 6 it provides that if prior to the discovery of oil and gas on this land or other acreage pooled therewith "Lessee shall drill a dry hole * * *", the lease will not terminate if "Lessee commences additional drilling or reworking operations * * *." And Paragraph 11, the force majeure clause which will be discussed later, provides "Should Lessee be prevented from complying * * *." Thus, throughout the lease in the instances noted and in others the obligations which must be performed are specifically assigned to the Lessee.

The stated purpose of the lease is for the drilling and producing of oil and gas. To accomplish that purpose, the land was let exclusively to the Lessee. It naturally follows that the intention of the parties was for the Lessee to do something to bring about that exploration and production of oil and gas. He could either do the drilling himself, or by the terms of the lease he was given permission to sublease or assign it to someone else, or to pool it with others and benefit from their drilling. As to this undivided interest, the Lessee had the exclusive control. This exclusive letting to him evidences an intention that the obligations were his alone, and that the acts of third parties or strangers to the contract would not suffice to meet his requirements of performance. He could meet his drilling obligations constructively by pooling with others, or by assignment; had the parties included in Paragraph 5 that the operations had to be commenced "by the Lessee", it would have made the contract ambiguous in that it otherwise provides that the operations could be done by an assignee of the Lessee or one with whom he has pooled the interest.

Even though there was drilling and production by another, on the failure of Appellant Hughes to either pay the delay rental or to commence operations for drilling on the leased premises, personally or constructively, before the anniversary date of November 8, 1973, the lease automatically terminated. No Texas Court has previously decided this exact question, but at least five cases can be found which hold that the drilling must be done by the Lessee, or that the Lessee must participate or pay his share of the drilling in order to keep his lease alive. Those cases are: *Earp v. Mid-Continent Petroleum Corporation*, 167 Okl. 86, 27 P.2d 855 (1933); *Willson v. Superior Oil Company*, 274 S.W.2d 947 (Tex.Civ.App.— Texarkana 1954, writ ref'd, n. r. e.); *Mattison v. Trotti*, 262 F.2d 339 (5th Cir. 1959); *Wagner v. Mounger*, 253 Miss. 83, 175 So.2d 145 (1965), and *Schank v. North American Royalties, Inc.*, 201 N.W.2d 419 (N.D.1972). In *Mattison v. Trotti*, supra, the 5th Circuit applied to a Texas case what it thought was the Texas law and we agree with its holding. *Willson v. Superior Oil Company*, supra, did not decide the precise question, but did so indirectly in holding that the lease was kept alive when the lessee entered a joint operating agreement with the lessee of another undivided interest and paid his proportionate part of the cost of drilling a well on the combined lands. That case is also important for its concise statements of the law of co-tenancy, and eliminates any contention that the Lessee here was the beneficiary of the drilling by his co-tenant.

"Each owner in a co-tenancy acts for himself and no one is the agent for the other nor has any authority to bind the other merely because of the relationship unless authorized to do so. *Myers v. Crenshaw*, Tex.Civ.App., 116 S.W.2d 1125, affirmed 134 Tex. 500, 137 S.W.2d 7; *Taylor v. Brindley*, 10 Cir., 164 F.2d 235."

Appellant contends that the force majeure clause would operate to extend the

lease, at least as to those formations from which the Atlantic Richfield well is producing. The "force majeure" in this case would be the Railroad Commission's spacing rules for gas wells. We overrule this contention because the parties are presumed to have contracted with knowledge of the law, the Railroad Commission's spacing rules; and for the further reason that the lease itself takes care of such situations as it provides that the Lessee can pool when he thinks it is necessary or advisable to do so to properly operate the premises in compliance with the Railroad Commission's spacing rules. Lessee was not prevented from drilling, but was in fact offered the opportunity to combine with Atlantic Richfield for drilling, almost certainly the only way he could financially afford to drill the 1/64th interest in the first place.

We have considered Appellant's other points of error, and overrule them without discussion, for to do so would only lengthen this Opinion and add nothing to the jurisprudence of the State.

The judgment of the trial Court is affirmed.