# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2031
_____

MBI Oil and Gas, LLC

*Plaintiff - Appellant*

v.

Royalty Interests Partnership, LP; Grayson Mill Bakken, LLC

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: February 12, 2025
Filed: July 25, 2025
_____

Before SMITH, KELLY, and KOBES, Circuit Judges.
_____

SMITH, Circuit Judge.

Royalty Interests Partnership, LP (Royalty) leased oil and gas drilling rights to MBI Oil & Gas, LLC (MBI) in 2013. The lease (MBI Lease) had a primary term of three years, with the option for the MBI Lease to continue as long as oil and gas production continued on the leased premises or the acreage pooled therewith. After the expiration of the primary term in 2016, MBI had not drilled any wells, contributed to any surrounding oil and gas production, nor paid any royalties to

Royalty. At the time of the expiration, one well was producing oil and gas on the leased premises. That well predated the MBI Lease, and Royalty had expressly reserved all rights to its production. In 2020, Royalty leased the same premises to Ovintiv USA Inc. (Ovintiv). Ovintiv subsequently drilled several wells on the premises, which later began producing oil and gas. In 2022, Royalty contacted MBI and requested that it release its 2016 lease because it had expired. Rather than release the lease, MBI initiated this litigation against Royalty and Ovintiv[1] disputing the lease's termination. MBI argued that its lease with Royalty had been properly extended past its primary term and therefore was valid and superior to the subsequent lease Royalty entered into with Ovintiv (Ovintiv Lease). Royalty and Grayson Mill counterclaimed. The counterclaim argued that the MBI Lease had expired because of MBI's inactivity and that the subsequently entered Ovintiv Lease was valid and enforceable. Both parties filed motions for summary judgment. The district court[2] granted summary judgment in favor of Royalty and Grayson Mill. The court found that MBI had failed to extend the term past the MBI's Lease's primary term by failing to produce oil and gas on the leased premises. MBI appeals this decision. We affirm.

## I. *Background*

In June 2013, Royalty executed an oil and gas lease with MBI covering real property in McKenzie County, North Dakota. The real property was described as specific lots located on Sections 3 and 10[3] of the "Township 149 North, Range 98

---

[1]The complaint originally named Ovintiv as the defendant, but Grayson Mill Bakken, LLC (Grayson Mill) was later substituted as the defendant because it was Ovintiv's successor in interest for the lease.

[2]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

[3]Section 3 included the following: Lots 1, 2, 3, S/2NE/4, E/2SW/4, SE/4NW/4, E/2SE/4, W/2SE/4. Section 10 included the following: NW/4NW/4, NE/4NE/4.

West of the 5th P.M." R. Doc. 44-1, at 2 (bold and underline omitted). In 2010, prior to the execution of the MBI Lease, the North Dakota Industrial Commission (NDIC) issued a spacing order to create a spacing unit[4] for Sections 3 and 10, including the premises that would later be covered by the MBI Lease. In 2011, the NDIC issued a pooling order[5] that would pool all oil and gas in the aforementioned spacing unit.

The MBI Lease expressly stated that Royalty granted the leasehold to MBI "for the purpose of mining, exploring . . . and operating for and producing therefrom all oil, gas and associated minerals." *Id*. The next provision in the MBI Lease was a reservation clause. The reservation clause reserved to Royalty

> ALL OF [Royalty's] RIGHT, TITLE AND INTEREST IN AND TO THE WELLBORE FOR THE . . . *CALHOUN #1-3H WELL* . . . TOGETHER WITH SUCH INTEREST OF [Royalty] DERIVED FROM THE MINERAL ESTATE, AS ARE NECESSARY TO VEST IN [Royalty] OWNERSHIP OF ALL OF [Royalty's] RIGHT, TITLE AND INTEREST IN THE WELLBORE AND THE PRODUCTION THEREFROM.

*Id*. In 2011, Calhoun #1-3H (Calhoun Well) was drilled in Lot 2 of Section 3 under a lease from another owner of mineral interests in the land. Royalty's predecessor participated in the Calhoun Well as an unleased mineral owner, paying its proportionate share of the costs to drill and complete the well. The Calhoun Well

---

[4]A spacing unit is an administratively created boundary created by the NDIC used to "prevent waste, to avoid the drilling of unnecessary wells, or to protect correlative rights." N.D.C.C. § 38-08-07(1).

[5]"A pool is a reservoir, or a common source of supply, and constitutes a common accumulation of oil or gas, or both." *Egeland v. Cont'l Res., Inc.*, 616 N.W.2d 861, 865 n.5 (N.D. 2000). Under a pooling order, when multiple parties own land within a spacing unit, they must combine or "pool" their separate interests in the land and divide between them all profits from production within the spacing unit. *See* N.D.C.C. § 38-08-08(1).

began producing oil and gas in 2011 and at all relevant times has continued to produce commercial quantities of oil and gas. Royalty receives royalties from the Calhoun Well's production as a working interest owner.

Next, the MBI Lease outlined the lease term in its habendum clause.[6] The MBI Lease had a primary term of three years, and the habendum clause provided that MBI was not obligated "to commence or continue any operations during the primary term" because MBI had provided a cash down payment and therefore the three-year term was "PAID UP." *Id.* (bold omitted). The MBI Lease could be extended past the primary term "as long thereafter as oil or gas of whatsoever nature or kind [was] produced in commercial quantities from said leased premises or on acreage pooled therewith, or drilling operations [were] continued." *Id.*

At the close of the MBI Lease's primary term in June 2016, MBI had not placed an active well on the leased premises or contributed to any other wells on the leased premises or on the acreage pooled. The only producing well was the Calhoun Well. In January 2020, Royalty leased the same tract of land covered under the MBI Lease in an oil and gas lease to Ovintiv. Under the Ovintiv Lease, Ovintiv drilled multiple wells in 2020 that later began producing oil and gas. In June 2022, Royalty sent a letter to MBI requesting that MBI file a release of the MBI Lease because of the lease's termination. MBI refused to file a release, and instead MBI filed a complaint in September 2022 claiming that the MBI Lease was valid and superior to the Ovintiv Lease. Royalty and Ovintiv filed counterclaims, arguing that the MBI Lease had expired and that the Ovintiv Lease was valid and enforceable.

The parties filed motions for summary judgment. Royalty and the newly substituted defendant, Grayson Mill, argued that the MBI Lease was terminated in 2016. Royalty averred that MBI's lack of production of any oil or gas ended the lease at the expiration of lease term. Royalty also argued that MBI was not entitled to rely

---

[6]"A habendum clause sets forth the duration of the grantee's or lessee's interest in the premises." *Egeland*, 616 N.W.2d at 862 n.1 (internal quotation marks omitted).

on the Calhoun Well's production to extend the MBI Lease because the reservation clause reserved all rights to the Calhoun Well production. In response, MBI argued that the Calhoun Well was on the leased premises and that the plain language of the habendum clause merely required that oil and gas be produced on the premises, not that it be produced by the lessee. Moreover, MBI argued that the Calhoun Well was on a tract that had been pooled with the leased premises, and therefore, under North Dakota's pooling statute, the Calhoun Well's production of oil and gas was sufficient to perpetuate the lease past the primary term.

The district court held that "[t]he plain language of the MBI Lease show[ed] the intent of Royalty and MBI was to exclude the Calhoun Well's production from perpetuating the MBI Lease into its secondary term." R. Doc. 53, at 6. The district court reasoned that "[u]nder [the reservation] provision, MBI has no interest in the production from the Calhoun Well." *Id.* at 7. Moreover, the district court found North Dakota's pooling statute "inapplicable" because the statute only applies to "separately owned tracts and not separately owned interest in the same tract." *Id.* at 8 (quoting *Schank v. N. Am. Royalties*, 201 N.W.2d 419, 432 (N.D. 1972)). The district court reasoned that the "Calhoun Well . . . f[ell] squarely within the bounds of the described leased premises" and was "a separately owned interest in the same tract." *Id.*

Thus, the district court found that MBI's failure to produce oil and gas on the leased premises or contribute to drilling on acreage pooled therewith caused the lease to terminate according to the lease terms. Consequently, the district court granted summary judgment to Royalty and Grayson Mill as to the termination of the MBI Lease. MBI appeals.

## II. *Discussion*

On appeal, MBI argues that the district court erred in granting summary judgment to Royalty and Grayson Mill because MBI was entitled to rely on the Calhoun Well production to perpetuate the lease pursuant to (1) the plain language of the habendum clause and (2) the North Dakota pooling statue. We disagree.

-5-

## A. *Plain Language Interpretation*

We review "de novo the district court's interpretation of a contract and its grant of summary judgment." *Pitchblack Oil, LLC v. Hess Bakken Invs. II, LLC*, 949 F.3d 424, 428 (8th Cir. 2020) (internal quotation marks omitted). "When sitting in diversity, we apply the forum state's substantive law. . . ." *Id.* Here, we will apply North Dakota law.

Under North Dakota law, oil and gas leases are interpreted in line with ordinary rules of contract interpretation. *N. Oil & Gas, Inc. v. EOG Res., Inc.*, 981 N.W.2d 314, 321 (N.D. 2022), *as amended* (Jan. 5, 2023). North Dakota law requires that "[t]he whole of a contract . . . be taken together so as to give effect to every part if reasonably practicable" and that "[e]ach clause is to help interpret the others." N.D.C.C. § 9-07-06; *see also Egeland*, 616 N.W.2d at 864 ("A contract must be read and considered in its entirety so that all of its provisions are taken into consideration to determine the true intent of the parties.").

Here, the parties dispute the meaning of two clauses of the lease. The meaning of these clauses determines the validity of MBI's claims. First, we have the reservation clause that unambiguously reserves all of Royalty's "RIGHT, TITLE AND INTEREST IN AND TO THE WELLBORE." R. Doc. 44-1, at 2. Second, we have the habendum clause that unambiguously sets the primary term at three years, with an option to extend the term of the lease "as long thereafter as oil or gas of whatsoever nature or kind [was] produced in commercial quantities from said leased premises or on acreage pooled therewith, or drilling operations [were] continued as hereinafter provided." *Id.*

Royalty and Grayson Mill argue that the reservation clause unambiguously precludes MBI from relying on the Calhoun Well's production to perpetuate the lease. The district court agreed, finding that Royalty reserved all right, title, and interest in the Calhoun Well and that the reservation "necessarily include[d] MBI's interest in the Calhoun Well continuing the MBI Lease into its secondary term." R. Doc. 53, at 7.

MBI argues that the habendum clause simply requires that oil and gas be produced either "on the leased premises or on acreage pooled therewith," *see* R. Doc. 44-1, at 2, which unambiguously allows MBI to rely on the Calhoun Well's production to perpetuate the lease. Moreover, MBI argues that the reservation clause only relates to Royalty's ownership interest over the Calhoun Well and the royalties associated with its mineral production and does not preclude MBI from using it to extend the term of the lease.

Generally, the language of the habendum clause would operate as MBI suggests. *See Mesa Petroleum Co. v. Scheib*, 726 F.2d 614, 615 (10th Cir. 1984) ("[P]roduction on the portion of [a lease] included within the unit is sufficient to keep the lease alive as to all of [the lease] after the expiration of the primary term under the language of the typical thereafter clause." (internal quotation marks omitted)). This default rule applies "unless the lease or unitization agreement contains a specific provision to the contrary." *Id.* (internal quotation marks omitted). In other words, the habendum clause could operate as MBI suggests *unless* there was language narrowing its scope.

Here, we have an express reservation clause immediately preceding the habendum clause. Under North Dakota law, a "reservation . . . is 'something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant.'" *Royse v. Easter Seal Soc. for Crippled Child. & Adults, Inc. of N. Dakota*, 256 N.W.2d 542, 545 (N.D. 1977) (quoting *Christman v. Emineth*, 212 N.W.2d 543, 552 (N.D. 1973)). The reservation clause unambiguously reserved all rights associated with the Calhoun Well "AND THE PRODUCTION THEREFROM." R. Doc. 44-1, at 2. The reservation clause was written to be exhaustive, as is demonstrated by its reference to "ALL OF [Royalty's] RIGHT, TITLE AND INTEREST." *Id.* "Interest" is defined as a "[a] legal share in something; all or part of a legal or equitable claim to or right in property." *Interest*, Black's Law Dictionary (12th ed. 2024); *see also Cavalier Cnty. v. Gestson*, 31 N.W.2d 787, 791 (N.D. 1948) ("The word interest is the broadest term applicable to claims in or upon real estate." (internal quotation marks omitted)). Therefore, the

reservation clause narrowed the scope of the habendum clause's reference to "said leased premises," *see* R. Doc. 44-1, at 2, by expressly removing the Calhoun Well from the grant.

MBI contends that its reliance on the Calhoun Well's production to perpetuate the MBI Lease term is not the equivalent of asserting a legal right to its production. Here, the reservation clause broadly reserves *all interest* that flows from the wellbore, as well as the mineral interests that may be produced from it. Accordingly, relying on Calhoun Well's oil and gas production to perpetuate the lease is equivalent to asserting some type of interest in the Calhoun Well. The reservation clause forecloses that possibility. MBI's argument, therefore, fails. Because the Calhoun Well is specifically removed from the leased premises, its production cannot satisfy MBI's obligation under the habendum clause.[7] Accordingly, the

[7]Royalty and Grayson Mill argue that MBI's interpretation of the habendum clause is flawed because the plain language of the lease requires MBI to drill or contribute to the production of oil and gas in some manner in order to perpetuate the lease. Royalty and Grayson Mill cite to the *Schank* decision out of North Dakota as confirmation that under North Dakota law, a lessee must take "some affirmative action" in order to maintain the lease. 201 N.W.2d at 433. However, as MBI points out, the habendum clause in *Schank* required that "oil or gas . . . is produced from said land *by the Lessee*." *Id.* at 426 (emphasis added) (internal quotation marks omitted). Royalty and Grayson Mill argue that this "by the Lessee" language is not dispositive because other courts have implied that requirement even in the absence of such language. *See Cimarex Energy Co. v. Anadarko Petroleum Corp.*, 574 S.W.3d 73, 91–92 (Tex. Ct. App. 2019) (interpreting mineral lease to impose obligation on lessee to cause production even when the clause does not specify who must cause production); *Mattison v. Trotti*, 262 F.2d 339, 340–41 (5th Cir. 1959) (same); *Wagner v. Mounger*, 175 So. 2d 145, 150–51 (Miss. 1965) (same). However, as this case was pending, the Supreme Court of Texas issued a decision in *Cromwell v. Anadarko E&P Onshore, LLC*, No. 23-0927, 2025 WL 1478494 (Tex. May 23, 2025). The court in *Cromwell* explicitly "disapprove[d]" of the *Mattison* and *Cimarex* cases, holding that "a passive-voice habendum clause does not automatically require production by the lessee." *Id.* at \*7. The court reasoned that "the habendum clauses in the [leases] . . . do not specify which party must do the producing, and [it] wo[uld]n't write in such a term." *Id.* at \*5. We need not determine whether the plain language of the MBI lease required MBI to be the one to produce

district court correctly held that "MBI ha[d] no interest in the production from the Calhoun Well." R. Doc. 53, at 7. Consequently, "[t]he Calhoun Well's production is, therefore, excluded under the contract and does not perpetuate the MBI Lease into its secondary term." *Id.*

## B. *The North Dakota Pooling Statute*

Alternatively, MBI argues that it is entitled to rely on the Calhoun Well's production pursuant to North Dakota's pooling statute because the Calhoun Tract was statutorily pooled with the leased premises in 2011. *See* N.D.C.C. § 38-08-08(1). Accordingly, MBI avers that it can still rely on the Calhoun Well's production under the "on acreage pooled therewith" language in the habendum clause. R. Doc. 44-1, at 2; *see also Egeland*, 616 N.W.2d at 866 ("The majority rule is governmental pooling and unitization orders do not divide a lease, and production anywhere on the pooled acreage holds all leases that may be wholly or partly in the unit.").

Section 38-08-08(1) provides:

> Operations incident to the drilling of a well upon any portion of a spacing unit covered by a pooling order must be deemed, for all purposes, the conduct of such operations upon each separately owned tract in the drilling unit by the several owners thereof. That portion of the production allocated to each tract included in a spacing unit covered by a pooling order must, when produced, be deemed for all purposes to have been produced from such tract by a well drilled thereon.

"The above quote, which deals with forced pooling, is applicable only where there are separately owned tracts and not separately owned interests in the same tract." *Schank*, 201 N.W.2d at 432. The district court reasoned that "[t]he Calhoun Well . . .

---

the oil or gas. Here, the only production that MBI purports to rely on is the production from the Calhoun Well. The Calhoun Well, under the express terms of the agreement, is reserved to Royalty and therefore cannot extend the MBI Lease.

-9-

f[ell] squarely within the bounds of the described leased premises . . . . [and was], therefore, a separately owned interest in the same tract." R. Doc. 53, at 8.

On appeal, MBI argues that § 38-08-08(1) is applicable because the leased premises and the Calhoun Well are two separate tracts rather than separate interests. This argument is belied by the plain language of the agreement. The "certain tract of land situated in" McKenzie County of North Dakota is outlined in the agreement as the leased premises. R. Doc. 44-1, at 2. The Calhoun Well is described as a wellbore with a "SURFACE LOCATION BEING LOCATED ON" the leased premises. *Id.* Royalty reserved their interests in the Calhoun Well, but this did not transform the Calhoun Well into a separate tract. The North Dakota Supreme Court has determined that "the word 'tract' implies a surface location," a "parcel of land," or a "region or stretch." *Schank*, 201 N.W.2d at 432. Here, the wellbore is located on the Calhoun Tract, which is part of the leased premises. Although the reservation clause operates to carve out the wellbore and its production, it does not reserve the entirety of the Calhoun Tract to Royalty. MBI does not cite to a single authority that has held a wellbore to be considered "a physical tract, made separate and distinct from the leased premises." Appellant's Br. at 19.

In *Schank*, the court found § 38-08-08(1) to be inapplicable because the dispute was between separate interests in the same tract, rather than separate tracts. 201 N.W.2d at 432. There, the dispute involved the same tract with at least two owners with fractional interest in the minerals and another owner with undivided mineral interests. Here, the division of interests operates in a similar manner. The Calhoun Well is a wellbore that is physically located on the same surface area as the leased premises. MBI still has a leasehold interest over the Calhoun Tract as part of the leased premises, but Royalty reserved its rights over the wellbore and its production. These are separately owned interests underlying the same land. The Calhoun Well was not transformed into a separate tract by way of the reservation. Instead, MBI and Royalty have "separately owned interests in the same tract" rather than "separately owned tracts." *Schank*, 201 N.W.2d at 432. Therefore, the district court did not err in finding § 38-08-08(1) to be inapplicable.

-10-

### III. *Conclusion*

For the foregoing reasons, we affirm the district court.

_____