612 So.2d 325 (1992)
Mrs. Rosemary T. FARRAGUT
v.
David H. MASSEY, Mary A. Barnett, Graham Royalty, Ltd., E.V. "Buddy" Cleveland.
No. 89-CA-0675.
Supreme Court of Mississippi.
May 20, 1992.
As Modified on Denial of Rehearing February 4, 1993.
Thomas W. Tardy, III, Terryl K. Rushing, Alston Rutherford Tardy & Van Slyke, Mark F. McIntosh, Jackson, for appellant.
*326 David H. Massey, Clark & Massey, Laurel, Robert H. Bass, Tollison Austin & Twiford, Oxford, for appellees.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
McRAE, Justice, for the Court:
Appellees David Massey and Mary Barnett, oil producers, hold a mineral lease covering property owned by appellant Rosemary Farragut. Appellees E.V. Cleveland and Graham Royalty, Ltd.[1] have conducted drilling operations on adjoining property. Both groups of appellees produce salt water as a by-product of their operations. Massey and Barnett began to dispose of their own salt water in an abandoned well situated on the leasehold property. When Farragut discovered that Massey and Barnett had additionally begun to dispose of salt water from the adjoining property, she sued for damages. The trial court granted summary judgment against Farragut. On appeal, Farragut raises the following issues:
I. Whether the lower court erred in finding the oil, gas and mineral lease authorized disposal of salt water produced off the leasehold?
II. Whether the lower court erred in finding that a release executed in favor of Massey and Barnett extinguished Farragut's right to recover?
III. Whether the lower court erred in denying Farragut's motion to strike the affidavit of David Massey and in considering the affidavit in deliberating on the parties' motions for summary judgment?
IV. Whether the lower court erred in granting summary judgment to defendants?
In their separate appellate brief, Cleveland and Graham Royalty raise the following additional issue:
V. Whether consent by the possessor of property creates privilege or license to enter?
Finding that summary judgment was wrongfully granted in favor of the appellees, we reverse and remand for a trial against all defendants.

FACTS
Rosemary Farragut owns a one-seventh royalty interest in a 212-acre parcel in Jones County, Mississippi. In February of 1980, she, along with her cotenants, executed a mineral lease in favor of Massey and Barnett. The lease agreement contained the following clause:
[Lessors do] hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil ..., together with the right to make surveys on the land, lay pipe lines, establish and utilize facilities for surface and subsurface disposal of salt water, construct [other improvements], necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto.
Massey and Barnett drilled an oil well ("Townsend No. 1") on the property in September, 1980. In February, 1981, Massey and Barnett obtained permission from the Mississippi State Oil and Gas Board to convert an abandoned well ("Townsend No. 3") located on the property for use as a salt water repository.
According to Farragut's affidavit, she knew nothing about the salt water repository until she discovered a crew reworking the Townsend No. 3 well. She allegedly made a demand for surface damages in the amount of $1,500.
In the Spring of 1981 Massey and Barnett drilled a second oil well ("Townsend No. 2") on Farragut's property and tied the new well into the Townsend No. 3 salt water disposal system. Massey and Barnett subsequently sent Farragut two *327 checks totaling $1,500 and submitted a release containing the following language:
[T]he undersigned does hereby release and relinquish any and all claims against David H. Massey, Mary A. Barnett, and Barnett and Massey, resulting from their preparation and the making location for the drilling and continuous operations of the Townsend No. 2 Well and Townsend No. 3 Well, and the establishment of production and the continuous production operations and disposal of salt water on the above set out land. The undersigned party does hereby release any and all claims against David H. Massey, Mary A. Barnett, and Barnett and Massey covering damages occurring on the lands set out above.
Farragut executed the release on September 23, 1981.
In April, 1982, Anderson Oil Co., Inc., and Adams Exploration Company (collectively: "Anderson") completed a well ("N.G. Stainton No. 1") located on a separate parcel of land to the southwest of Massey and Barnett's wells. In June, Massey and Barnett offered to dispose of Anderson's salt water in the Townsend No. 3 well.
Meanwhile, Cleveland had drilled a well ("Ramsey 3-15 No. 2") on property to the south of and adjacent to the property covered by the Farragut-Massey/Barnett lease. Cleveland inquired with Massey and Barnett concerning the possibility of injecting saltwater from the Ramsey 3-15 No. 2 well into the Townsend No. 3 repository.
Late in 1982, Anderson and Cleveland constructed pipelines connecting the N.G. Stainton No. 1 well and the Ramsey 3-15 No. 2 well to the Townsend No. 3 salt water repository. Massey and Barnett began to dispose of salt water from Anderson's and Cleveland's operations at a charge of twenty cents per barrel.
According to Farragut, an employee of Graham Royalty approached her in May or June of 1986 and offered to pay damages for a spillage from the salt water pipeline. Farragut claims that prior to being approached by Graham Royalty she did not know that Massey and Barnett were accepting salt water from other operations. She avers in her affidavit that Massey and Barnett had misled her to believe that the pipelines carried natural gas.
On April 30, 1987, Farragut filed suit against the appellees. She sought recovery from Massey and Barnett on grounds of trespass, unjust enrichment, fraud and concealment, intentional breach of contract, breach of fiduciary duty and tortious breach of contract. Farragut sought relief from Cleveland and Graham Royalty on grounds of trespass.
The defendants filed a motion for summary judgment in which they asserted that the granting clause in Farragut's lease to Massey and Barnett, along with the release Farragut signed, defeated the plaintiff's claims. Farragut filed a motion for partial summary judgment on grounds that the lease agreement did not provide for the importation of salt water from off the leasehold premises and that the release was void as against public policy. On May 9, 1989, the trial court granted summary judgment for the defendants and denied Farragut's motion.

LAW

I. WHETHER THE LOWER COURT ERRED IN FINDING THE OIL, GAS AND MINERAL LEASE AUTHORIZED DISPOSAL OF SALT WATER PRODUCED OFF THE LEASEHOLD?
The appellees note that the Farragut's lease agreement grants Massey and Barnett the authority to construct and operate facilities for disposing of salt water "produced from the land covered hereby or any other land adjacent thereto." They concede that the lease requires the facilities to be "necessary or useful" to the lessees operations, but argue that disposing of salt water from adjoining properties is both necessary and useful: "useful" in that the proceeds paid by Cleveland and Graham Royalty make Massey's and Barnett's operation more profitable; "necessary" in that reinjecting saltwater produced by other wells extends the useful life of the oil field and thus prevents waste.
*328 The trial court below agreed. In its Findings of Fact and Conclusions of Law, the court found that the lease was "without ambiguity" and "gave the Defendants the right to dispose of salt water, subsurface and surface from lands and adjacent lands to the lease."
The trial court is superficially correct in finding that the lease agreement permits the importation of salt water from adjoining properties. Both the trial court and the appellees neglect to note, however, that the lease permits the practice only where the lessee's operations extend to the adjoining properties. The lease clearly states:
[Lessee may] establish and utilize [salt water disposal facilities] necessary or useful in lessee's operations in ... producing ... minerals ... from the land covered hereby or any other land adjacent thereto.

The phrase "adjacent thereto" unambiguously refers to properties from which the lessee extracts minerals; it is not syntactically tied to the source of the salt water.
Where the language of a lease is unambiguous, it must be enforced according to its plain meaning. See Barnett v. Getty Oil Co., 266 So.2d 581, 586 (Miss. 1972) (where lease is clear and unambiguous, Court should look solely to language of instrument and give same effect as written); Wagner v. Mounger, 253 Miss. 83, 90-91, 175 So.2d 145, 147-48 (1965) (where terms of lease are clear and unambiguous, court should not enlarge terms by needless construction). Guided by this principle, an Illinois Court in Gill v. McCollum, 19 Ill. App.3d 402, 311 N.E.2d 741 (Ill. App.Ct. 1974) found that the holder of a mineral lease does not have the right to import salt water from adjacent lands absent an express grant of authority. Professor Kuntz recognizes the same rule:
The right of the mineral owner to use and occupy the land is restricted to operations for exploring for and extracting minerals from that land. Thus, the land cannot be used ... to dispose of salt water from other land.
1 E. Kuntz, A Treatise on the Law of Oil and Gas, § 3.2 at 87-88 (1987).
Citing Gill, Kuntz notes that "[the] grant of the right to inject liquids and gas does not give the lessee the right to use a well on the leased premises for the disposal of salt water from other leases." 4 E. Kuntz, § 50.4(c) (Supp. 1989).
Appellees Cleveland and Graham Royalty argue in their brief that "it has been the custom in Mississippi for several operators in a field to dispose of salt water into an existing salt water disposal well whether it was on their lease hold premises or not." In the absence of ambiguity, however, industry customs must bow to the terms of the lease. See Barnett, 266 So.2d at 586 (court should not resort to extrinsic aid when construing clear and unambiguous lease); see also In re Estate of Fike, 385 Pa.Super. 627, 631, 561 A.2d 1268, 1270 (Pa. Super. Ct. 1989) (court may look to evidence of custom and usage only where terms of lease are ambiguous).
The unambiguous lease agreement between Farragut and appellees Massey and Barnett does not authorize the lessees to accept salt water from third parties holding leases on adjoining lands. The trial court's findings to the contrary are erroneous.

II. WHETHER THE LOWER COURT ERRED IN FINDING THAT A RELEASE EXECUTED IN FAVOR OF MASSEY AND BARNETT EXTINGUISHED FARRAGUT'S RIGHT TO RECOVER?
The appellees argue that even if the lease agreement did not give Massey and Barnett the authority to import salt water from third parties on adjacent tracts, the release Farragut executed prevents them from incurring liability. Pursuant to the release, Farragut relinquished all claims against Massey and Barnett relating to "Townsend No. 3 Well, and the establishment of production and the continuous production operations and disposal of salt water on the above set out land." The release further waived "any and all claims against David H. Massey, Mary A. Barnett, and Barnett and Massey covering damages occurring *329 on the lands set out above." The court below found that the language of the release was unambiguous and that the instrument extinguished Farragut's right to recover against the defendants.
On appeal, the appellees insist that the importation of salt water from the operations of Cleveland and Graham Royalty fall within "the continuous production operations and disposal of salt water on the above set out land." The release "speaks for itself," the appellees maintain. They cite McCorkle v. Hughes, 244 So.2d 386 (Miss. 1971) for the proposition that
every person must be presumed to know the law, and in absence of some misrepresentation, or illegal concealment of facts, the person must abide the consequences of his contracts and actions.
Id. at 388 (quoting Fornea v. Goodyear Yellow Pine, 181 Miss. 50, 65, 178 So. 914, 918 (1938)).
The trial court's ruling  and the appellees' defense thereof  is misguided. The terms of the release are ambiguous, and the court below should not have construed it without the aid of extrinsic evidence of intent. In Sumter Lumber Co. v. Skipper, 183 Miss. 595, 184 So. 296 (1938), this Court stated:
The rules for the construction of deeds or contracts are designed to ascertain and to follow the actual or probable intention of the parties and are: When the language of the deed or contract is clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout, the court looks solely to the language used in the instrument itself, and will give effect to each and all its parts as written. When, however, the language falls short of the qualities above mentioned and resort must be had to extrinsic aid, the court will look to the subject matter embraced therein, to the particular situation of the parties who made the instrument, and to the general situation touching the subject matter, that is to say, to all the conditions surrounding the parties at the time of the execution of the instrument, and to what, as may be fairly assumed, they had in contemplation in respect to all such said surrounding conditions, giving weight also to the future developments thereinabout which were reasonably to be anticipated or expected by them; and when the parties have for some time proceeded with or under the deed or contract, a large measure, and sometimes a controlling measure, of regard will be given to the practical construction which the parties themselves have given it, this on the common sense proposition that actions generally speak even louder than words.
Id., 183 Miss. at 608-09, 184 So. at 298-99, quoted in Brashier v. Toney, 514 So.2d 329, 332 (Miss. 1987) and Clark v. Carter, 351 So.2d 1333, 1335 (Miss. 1977).
The release at issue in the case sub judice is not "clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout." Two clauses contained in the instrument seem to extend the waiver only to surface damages resulting from the drilling and preparation of the Townsend No. 2 and Townsend No. 3 wells while a third appears to extend the waiver to the continuous disposal of salt water. The second paragraph reads:
WHEREAS, Rosemary T. Farragut and David H. Massey have agreed for surface damages releases on said land on which there is located the Townsend No. 2 and Townsend No. 3 salt well ...
(emphasis added).
The third paragraph similarly states:
WHEREAS, it is the desire of the parties set out herein to settle any and all claims for surface damages for the location of the Townsend No. 2 and Townsend No. 3 Wells located on above land ...
(emphasis added).
The fourth paragraph adds the language on which the appellees rely:
NOW THEREFORE ... the undersigned does hereby release and relinquish any and all claims against David H. Massey, Mary A. Barnett, and Barnett and Massey, resulting from their preparation and the making location for the drilling and continuous operations of the Townsend No. 2 Well and Townsend No. 3 Well, and the establishment of production *330 and the continuous production operations and disposal of salt water on the above set out land.

(emphasis added).
The fourth paragraph expresses a much broader waiver than do the preceding two paragraphs. The conflict creates ambiguity. The instrument is also indefinite and unclear concerning the scope of permissible salt water disposal operations. Does the release permit unlimited disposal, or does it permit only the disposal of salt water produced in Massey's and Barnett's operations? This question is crucial to the instant dispute, and the release does not resolve it. Accordingly, the trial court should have looked beyond the document in order to determine the parties' intent.
The circumstances existing when Farragut executed the release indicate that she did not intend a waiver as broad as the appellees assert. At the time, the dispute between Farragut and her lessees focused entirely upon operations occurring within the boundaries of the leasehold property. No third parties were involved. All the salt water flowing into the Townsend No. 3 well came from the other Townsend wells. There is nothing to indicate that Farragut could reasonably have anticipated or contemplated the importation of salt water from the Cleveland well, particularly since the lease agreement did not provide for it. Furthermore, the release must be construed against Massey, the party who drafted it. See Leach v. Tingle, 586 So.2d 799, 801 (Miss. 1991) (ambiguities in contract should be construed against party who drafted the instrument); see also State Farm Mutual Automobile Ins. Co. v. Scitzs, 394 So.2d 1371, 1372 (Miss. 1981).
Even if the release were not ambiguous, it would still not relieve the appellees of liability in the case sub judice. According to 17 Am.Jur.2d Contracts § 297 n. 74 (1991): "Clauses limiting liability are given rigid scrutiny by the courts, and will not be enforced unless the limitation is fairly and honestly negotiated and understandingly entered into." Again, the record contains nothing to indicate an understanding with regard to the importation of salt water from third parties on adjoining lands. Moreover, this Court has held on more than one occasion that a party may not use an anticipatory release as a means to escape liability for tortious acts. In Yazoo & Mississippi Valley Railroad Co. v. Smith, 90 Miss. 44, 43 So. 611 (1907), a plaintiff landowner had conveyed a right of way to the defendant railroad. The right-of-way conveyance contained the following release: "I do hereby release the said [railroad company] from any and all damages, whether past, present or future, for the construction and operation of its tracks along said street in front of said property." Id., 43 So. at 611. Subsequently, the railroad raised the grade of the street by three feet. The resulting flooding prompted the landowner to file suit. The trial court determined that the release was immaterial and refused to admit it into evidence. This Court agreed, stating:
The deed releases all damages arising out of the "construction and operation of its tracks." At that date the road had been constructed and was in operation, and the contract cannot be interpreted to mean, in the use of the word "future," that grades of the street might be elevated, so as to flood the property, without complaint. This would be an unreasonable construction.
Id., 43 So. at 611-12.
Obviously, the Court in Smith concluded that the release applied only to damages incident to the normal, everyday operations of the railroad. Raising the grade of the street was not within the scope of the parties' understanding at the time the right-of-way deed was executed.
The Court similarly refused to liberally construe an anticipatory release in L & A Contracting Co. v. Hube, 241 Miss. 710, 133 So.2d 394 (1961). In Hube, the plaintiff had executed a right-of-way deed to the Highway Commission for the purposes of road construction. The instrument contained the following language:
It is further understood and agreed that the consideration herein named is in full payment and settlement of any and all claims or demands for damage accrued, *331 accruing, or to accrue to the grantors herein, their heirs, assigns, or legal representatives, for or on account of the construction of the proposed highway, change of grade, water damage, and/or any other damage, right or claim whatsoever.
Id., 133 So.2d at 395.
L & A Contracting Co., a subcontractor for the Highway Commission, destroyed a number of pine seedlings on the plaintiff's adjoining property while installing a culvert. When the plaintiff sued for damages, L & A sought protection under the release contained in the right-of-way deed. This Court affirmed a judgment in favor of the plaintiff and held:
We do not think this release was intended to extend to wilful or grossly negligent damage to the surface of and timber on grantor's adjacent property... . The release covers the normal and necessary public operations of the Commission and its contractors. [Cites omitted]. It was not within the intent of the parties to release the Commission's contractor from tortious acts committed on the grantor's adjacent land either intentionally or through gross negligence.
Id., 133 So.2d at 395-96.
As in Smith and Hube, the activities of which Farragut complains exceed the scope of the operations contemplated in the release. The release clearly permits Massey and Barnett to dispose of salt water from their own wells. The release cannot be read so broadly, however, as to permit dumping by third parties. The trial court erred in finding that the release foreclosed Farragut's right to proceed against the appellees.

III. WHETHER THE LOWER COURT ERRED IN DENYING FARRAGUT'S MOTION TO STRIKE THE AFFIDAVIT OF DAVID MASSEY AND IN CONSIDERING THE AFFIDAVIT IN DELIBERATING ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT?
Attached to the defendants' motion for summary judgment was an affidavit by David Massey. In the affidavit, Massey averred that
Mrs. Farragut was informed that salt water was being disposed of from adjacent wells and knew that the pipeline came across her brother's land and not hers.... Mrs. Farragut never objected to my operations on her land, and even leased the deep rights to me in February of 1987. This lease has the same language for disposal of salt water as the lease taken in 1980.
In essence, Massey alleged that Farragut knowingly consented to the disposal of salt water from the Ramsey 3-15 No. 2 well.
According to Miss.R.Civ.Pro. Rule 56(e): Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.
Massey's affidavit fails to meet the requirements of Rule 56(e) in at least two respects. First, it merely states that Farragut "was informed" and "knew" about the imported salt water. Nowhere does it indicate that Massey had personal knowledge of these alleged facts. Secondly, Massey failed to attach copies of the documents to which he referred in the affidavit. In Briscoe's Foodland v. Capital Associates, 502 So.2d 619, 622 (Miss. 1986), this Court found a supporting affidavit to be worthless for the same two reasons. The lower court thus erred in denying Farragut's motion to strike Massey's affidavit.

IV. WHETHER THE LOWER COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS?
Miss.R.Civ.Pro. Rule 56(c) states that summary judgment is proper only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The movant bears the burden of proof. Pargo v. Electric Furnace Co., 498 So.2d 833, 835 (Miss. 1986); Shaw v. Burchfield, 481 So.2d *332 247, 252 (Miss. 1985). In the instant case, the defendants' motion for summary judgment is supported only by a defective affidavit along with a lease agreement and a release, neither of which says what the appellees interpret it to say. The lower court should not have granted the defendants' motion for summary judgment.

V. WHETHER CONSENT BY THE POSSESSOR OR PROPERTY CREATES PRIVILEGE OR LICENSE TO ENTER?
Cleveland and Graham Royalty argue that they should be absolved of liability for trespass since Massey and Barnett gave them permission to dispose of salt water in the Townsend No. 3 well. They quote 75 Am.Jur.2d Trespass § 341 which states: "Consent or license may be a defense to an action of trespass, provided it is granted by one in possession, or entitled to possession, of the premises, even though given under mutual mistake of fact." Indeed, this Court has held that where a tenant in possession grants permission or license for a third party to enter, the owner cannot prevail in an action for trespass against the third party. See Hicks v. Mississippi Lumber Co., 95 Miss. 353, 48 So. 624, 625 (1909); Bollinger-Franklin Lumber Co. v. Tullos, 124 Miss. 855, 87 So. 486, 486-87 (1921).
The third party's right to rely on a third party's permission to enter, however, extends no further than the third party's possessory interest in the land. See generally, Restatement (Second) of Torts § 164 (1965) (one who enters land upon consent by a non-possessor is liable for trespass); 87 C.J.S. Trespass § 51 (1954) (permission to enter given by person having no authority to grant it is no defense in action for trespass). In Grisham v. Hinton, 490 So.2d 1201, 1205 (Miss. 1986), we held that when a party comes upon another's property, he incurs a duty "to take whatever precaution and safeguards as are reasonably necessary under the facts of that case to assure himself that he has the lawful authority to do so."
We hold that a genuine issue of material fact remains unresolved regarding whether the entry of Cleveland and Graham upon Farragut's land exceeded the bounds of Massey's and Barnett's possessory interest. This being so, we find that the trial court erred in granting summary judgment in favor of Cleveland and Graham Royalty.

CONCLUSION
Contrary to the court's finding, the mineral lease that Farragut granted to Massey and Barnett did not authorize the lessees to dispose of salt water from third-party wells on adjacent tracts. Further, the release Farragut signed cannot reasonably be construed as permitting Massey and Barnett to dispose of salt water from third parties in addition to their own. The trial court, therefore, should not have found that the defendants were entitled to judgment as a matter of law.
Although Massey alleged in an affidavit that Farragut knew about and consented to the disposal of salt water from adjoining lands, the affidavit was defective and thus immaterial to the defendants' motion for summary judgment. The defendants offered nothing else to support their motion, so they clearly failed to establish the absence of a genuine issue of material fact.
Cleveland and Graham Royalty claim that they cannot be held liable for trespass since Massey and Barnett granted them permission to transmit salt water across the leasehold property. The law on which Cleveland and Graham Royalty rely is sound, but a question of fact exists concerning the extent of Massey's and Barnett's possessory interest and, consequently, concerning whether Cleveland and Graham Royalty could rightfully rely on Massey's and Barnett's grant of permission to enter. The grant of summary judgment in favor of Cleveland and Graham Royalty was thus erroneous.
We hold that the trial court erred in granting summary judgment to the defendants, and we remand for proceedings consistent with this opinion.
REVERSED AND REMANDED.
*333 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
NOTES
[1] Cleveland and Graham Royalty were consecutive operators of the drilling operations on the adjoining property. An assignment from Cleveland to Graham Royalty was executed on or about January 3, 1984.