# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-01160-SCT

*MIKE AND GAYRA QUINN, INDIVIDUALLY AND AS
PARENTS AND NEXT FRIENDS OF BRANDON
QUINN*

*v.*

*MISSISSIPPI STATE UNIVERSITY; DR. DONALD
ZACHARIAS, PRESIDENT OF MISSISSIPPI STATE
UNIVERSITY; RON POLK, MISSISSIPPI STATE
UNIVERSITY HEAD BASEBALL COACH; AND STEVE
SMITH, MISSISSIPPI STATE UNIVERSITY
ASSISTANT BASEBALL COACH AND DIRECTOR OF
MISSISSIPPI STATE UNIVERSITY BULLDOG
BASEBALL CAMP FOR 1992*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/14/94 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | THOMAS L. SWEAT, JR. |
| ATTORNEY FOR APPELLEES: | JOHNNIE M. HALEY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 7/2/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/23/98 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Brandon Quinn was injured when hit with a baseball bat in the mouth by an instructor at the Mississippi State Baseball Camp on June 22, 1992. Quinn sued the university, its president, the head baseball coach, and one of the assistant coaches who was also the director of the camp, for injuries he

sustained as a result of being hit with the bat. The claim was based on negligence on the part of the university and its coaches, or, in the alternative, a breach of implied contract for failing to provide baseball instruction to Brandon in a safe manner.

¶2. The defendants moved for summary judgment based on sovereign immunity and qualified immunity for public officials. In response to the assertion of breach of implied contract, the defendants assert that the release signed by the Quinns absolves them from any liability.

¶3. Aggrieved by the lower court's grant of summary judgment, the Quinns appealed to this Court, raising the following issues:

**I. WHETHER THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT IN FAVOR OF MISSISSIPPI STATE UNIVERSITY, DR. DONALD ZACHARIAS, RON POLK, AND STEVE SMITH BASED ON SOVEREIGN IMMUNITY AND QUALIFIED IMMUNITY.**

**II. ALTERNATIVELY, WHETHER THE TRIAL COURT ERRED IN NOT FINDING AN IMPLIED CONTRACT BETWEEN BRANDON QUINN AND MISSISSIPPI STATE UNIVERSITY.**

**III. WHETHER THE STATUTE OF LIMITATIONS HAD RUN ON THE QUINNS' CLAIM.**

## STATEMENT OF THE FACTS

¶4. Brandon Quinn, then twelve years old, was attending the Mississippi State Baseball Camp in Starkville, Mississippi, on June 22, 1992. While attending the camp, Brandon was being instructed on hitting by Coach Keith Kosh, and was watching a demonstration by Coach Kosh on how to approach hitting baseballs off of a tee. Brandon claims that Coach Kosh, without warning to the campers, swung the baseball bat. The bat hit Brandon in the mouth, knocking out one permanent tooth and permanently damaging four other teeth.

¶5. On June 20, 1994, Mike and Gayra Quinn, individually and as parents and next friends of Brandon Quinn, filed suit in Oktibbeha County Circuit Court against Mississippi State University (MSU); Dr. Donald Zacharias, President of MSU; Ron Polk, MSU Head Baseball Coach; Steve Smith, MSU Assistant Baseball Coach and Director of the MSU Bulldog Baseball Camp for 1992; and Keith Kosh, Bulldog Baseball Camp Coach and/or Assistant for 1992. The Quinns sought damages for the injury to Brandon's mouth. The theory under which the complaint was brought was negligence and, in the alternative, that the defendants breached an implied contract with the plaintiffs to provide baseball instruction to Brandon Quinn in a safe manner.

¶6. MSU responded by stating Brandon, with the consent of his parents, attended a youth baseball camp sponsored by MSU. The Quinns paid a fee to allow the applicant to attend the baseball camp. Mike and Brandon both signed a document which states in part:

> The undersigned applicant and parent/guardian understand that the applicant will be engaging in physical activity during the program which contains an inherent risk of physical injury and the undersigned assumes the risk, indemnifies, and releases Mississippi State Baseball Camp, its officers, Directors, Agents, and Employees from any and all liability for personal injury arising out of the applicant's participation in the Camp program.[(1)]

¶7. Polk, Smith, and Zacharias, respectively the university head baseball coach, the university assistant baseball coach (and director of the baseball camp), and the university President, claim they were not at the scene of the incident at the time of the injury, did not witness the incident, took no actions and did not fail to take any actions relevant to the injury to Brandon, and were performing in their official capacities on the date of the incident as state employees within the course and scope of their state employment.

¶8. In July of 1994, MSU, Dr. Donald Zacharias, Ron Polk and Steve Smith filed a motion to dismiss based on the doctrines of sovereign immunity and qualified immunity for public officials. A hearing was held on September 8, 1994, on this motion, and an Order Granting Motion for Summary Judgment in favor of the defendants was issued on October 14, 1994. The Order did not specify the grounds upon which it was issued. It is from the Order Granting Motion for Summary Judgment that the Quinns have appealed to this Court.

¶9. The Quinns assert that there are genuine issues of material fact regarding the relationship between Brandon and MSU, as to the implied contract and release, which should have survived a motion for summary judgment and been determined by a trier of fact at trial.


## DISCUSSION OF THE ISSUES

### A. Summary judgment

#### 1. Standard of review

¶10. The standard for reviewing the grant or denial of summary judgment is the same standard on appeal as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. This Court employs a de novo standard of review of a lower court's grant or denial of summary judgment and examines all

> the evidentiary matters before it--admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt.

*McCullough v. Cook*, 679 So. 2d 627, 630 (Miss. 1996) (quoting *Mantachie Natural Gas Dist. v. Mississippi Valley Gas Co.*, 594 So. 2d 1170, 1172 (Miss. 1992); *Clark v. Moore Memorial United Methodist Church*, 538 So. 2d 760, 762 (Miss. 1989)).

### 2. Timeliness of filing of affidavits

¶11. The Quinns filed their complaint alleging inter alia that the defendants were negligent both in their operation of the baseball camp at Mississippi State University and employment and supervision of camp instructor Keith Kosh. Alternatively, the Quinns alleged that they entered into an implied contract with the university by paying the $265 fee for their son, Brandon, to improve his playing skills in the sport of baseball. The Quinns asserted that the defendants breached this implied contract, which required the safety of business invitees, by employing an instructor that failed to conduct the camp and its activities in a safe manner.

¶12. The defendants responded with a motion for summary judgment and filed a brief with the court on the day of the motion hearing. On that date, the judge provided the Quinns with thirty days to respond to the defendants' brief. The Quinns submitted affidavits with their brief.[(2)]

¶13. The defendants on appeal assert that the trial judge incorrectly allowed the Quinns to submit the affidavits because their filing was untimely according to Rule 56(c) of the Mississippi Rules of Civil Procedure. The pertinent portion of Rule 56(c) reads: "The adverse party prior to the day of the hearing **may** serve opposing affidavits." M.R.C.P. 56(c) (emphasis added). The defendants' position is that affidavits must be served prior to the day of the summary judgment hearing. The Quinns submitted their affidavits after the hearing when they filed their response to the defendants' brief in support of their motion for summary judgment. According to the defendants, any consideration of the affidavits by the trial judge of those affidavits is error.

¶14. In *Richardson v. APAC-Mississippi, Inc.*, 631 So. 2d 143, 147 (Miss. 1994), this Court discussed the striking of affidavits not timely filed. There the Court stated that the Mississippi Rules of Civil Procedure flow from the Federal Rules of Civil Procedure. The Court quoted from *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), where the United States Supreme Court interpreted Rules 56(c) and 6(b) in a case where the nonmovant in a motion for summary judgment did not file opposing affidavits:

> Respondent's evidentiary submission was indeed untimely, both under Rule 56, which requires affidavits in opposition to a summary judgment motion to be served "prior to the day of the hearing," Fed.R.Civ.P. 56(c), and under Rule 6(d), which states more generally that "[w]hen a motion is supported by affidavit,. . .opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time." Rule 6(b) sets out the proper approach in the case of late filings:
>
>> "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally

prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect. . ."

This provision not only specifically confers the "discretion" relevant to the present issue, but also provides the mechanism by which that discretion is to be invoked and exercised. First, any extension of a time limitation must be "for cause shown." Second, although extensions before expiration of the time period may be "with or without motion or notice," any post-deadline extension must be "upon motion made," and is permissible only where the failure to meet the deadline "was the result of excusable neglect." Thus, in order to receive the affidavits here, the District Court would have had to regard the very filing of the late document as the "motion made" to file it; it would have had to interpret "cause shown" to mean merely "cause," since respondent made no "showing" of cause at all; and finally, it would have had to find as a substantive matter that there was indeed "cause" for the late filing, and that the failure to file on time "was the result of excusable neglect."

*Richardson*, 631 So. 2d at 147(*quoting **Lujan***, 497 U.S. at 895-97).

¶15. The Quinns state that the judge allowed them an extension to file the affidavits by granting them thirty days to respond to the defendants' brief in support of summary judgment, and that the defendants had ample time to respond to both. Their argument, in effect, claims that the defendants suffered no prejudice by the judge allowing the affidavits. The defendants claim that the opportunity to respond to their brief granted by the trial judge did not provide authority to the Quinns to submit the affidavits.

¶16. We hold that any consideration by the trial judge of the affidavits submitted by the Quinns was harmless error. The affidavits only affirmed the contents of the complaint filed by the Quinns. Further, the record contains sufficient evidence that the judge granted an enlargement of time in which the Quinns could file the affidavits.[3] The judge granted the Quinns time to file a response because they had only received the defendants' brief on the day of the hearing. Also, the time granted was more than was requested.

¶17. The filing of the affidavits did not cause the judge to consider anything that he was not already obligated to consider under Rule 56(c). The trial judge is to consider all pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, and judgment is to be rendered if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). In the absence of any timely filing of affidavits, the trial judge would have still had to have considered the complaint filed by the Quinns. The complaint is included in the term pleadings,[4] which Rule 56(c) states must be considered. Because the affidavit only affirmed what the complaint alleged, this Court finds that it was correct for the trial judge to consider the affidavits.

## B. Sovereign immunity

¶18. The Quinns assert that sovereign immunity should not bar their claim because of the uncertainty of the law at that time in Mississippi. The injury sustained by Brandon Quinn took place on June 22, 1992, prior to this Court's decision in ***Presley v. Mississippi State Highway Commission***, 608 So.

2d 1288 (Miss. 1992). It was in *Presley* where this Court found the legislature's response to *Pruett v. City of Rosedale*, 421 So. 2d 1046 (Miss. 1982), in Miss. Code Ann. § 11-46-1 to -23 unconstitutional. The issue then became whether *Presley* should be applied prospectively or retroactively. Most of the Quinns' argument against sovereign immunity rests on that question.

¶19. This Court answered the question of how to apply the rationale from *Presley* in *Robinson v. Stewart*, 655 So. 2d 866, 868 (Miss. 1995), by stating that it was to be applied prospectively only. By applying *Presley* prospectively, sovereign immunity was available to MSU on the date of the injury to Brandon.

¶20. The Quinns also raise the proposition that any provision of Miss. Code Ann. § 11-46-1 to -23 that limits a person's access to the courts because of who caused the injury is in violation of both the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, in that persons so injured are denied property or a means of seeking redress for injury without due process of law. Further, the Quinns argue that such persons are not provided the same protection of the law as someone who is injured by a state employee at a later date, or by someone other than a state employee.

¶21. This Court has noted that the Immunity Act, Miss. Code Ann. § 11-46-1 to -23, as enacted by the post-*Pruett* legislature and prior to the holding in *Presley*, protected the state against suit. *Robinson*, 655 So. 2d at 869; *Richardson v. Rankin County Sch. Dist.*, 540 So. 2d 5, 8 (Miss. 1989) (not ruling on constitutional grounds). Because *Presley* is not retroactive, the Sovereign Immunity Act of 1984 as subsequently amended governs during the post-*Pruett* and pre-*Presley* period. *PYCA Indus., Inc. v. Harrison County Waste Water Management Dist.*, 81 F.3d 1412, 1418 (5th Cir. 1996). Prior to *Pruett*, there was no right to sue the government at common law. This Court's prior holdings dictate that a due process violation requires the infringement of a liberty or property right. *Tucker v. Hinds County*, 558 So. 2d 869, 873 (Miss. 1990) (holding possession of property interest protected by Mississippi Due Process Clause necessary to pierce sovereign immunity). The Court in *Robinson* determined that because the legislature had withheld that right through statutes, there was no property right to sue the state; therefore, no due process violation had occurred. *Robinson*, 655 So. 2d at 869.

¶22. The Quinns submit that the provisions of § 11-46-1 to -23 violate Miss. Const., art. III, §24, which provides the courts shall be open and a remedy shall be available for every injury. In *Presley*, we did not address § 11-46-1 to -23 as it relates to the Remedy Clause. However, in *Robinson*, *supra*, we held the remedy clause is not an absolute guarantee of a trial and that it is the legislature's decision whether to address restrictions upon actions against government entities. *Mohundro v. Alcorn County*, 675 So. 2d 848, 852 (Miss. 1996) (*citing Robinson*, 655 So. 2d at 868-69). *See also Wells v. Panola County Bd. of Educ.*, 645 So. 2d 883 (Miss. 1994); *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441 (5th Cir. 1991).

¶23. The Quinns posit, alternatively, that our previous decisions in *Webb v. Jackson*, 583 So. 2d 946 (Miss. 1991), and *Morgan v. City of Ruleville*, 627 So. 2d 275 (Miss. 1993), would apply sovereign immunity based on whether the State or subdivision thereof is engaged in a governmental or proprietary function, with immunity extending only to the governmental function. Because the distinction between governmental and proprietary functions are applied only to municipalities and not

to the state itself, this argument must fail. *Mississippi Transp. Comm'n v. Rector*, 663 So. 2d 601, 602 (Miss. 1995) (*citing Strait v. Pat Harrison Waterway Dist.*, 523 So. 2d 36, 40 (Miss. 1988)).

## C. Qualified immunity

¶24. Zacharias, Polk, and Smith assert they should be protected from suit by the doctrine of qualified immunity. The Quinns respond by claiming qualified immunity is not applicable in the case sub judice, and as authority, cite to the Court its decisions in *Womble v. Singing River Hospital*, 618 So. 2d 1252 (Miss. 1993), and *Sullivan v. Sumrall*, 618 So. 2d 1274 (Miss. 1993). However, the Quinns' argument is without merit.

¶25. Limited immunity applies to actions by a state agency, an arm of the state or local government and the members thereof, who either for remuneration or as a public service, engage in discretionary functions for which the agency or governmental arm was formed. *T.M. v. Noblitt*, 650 So. 2d 1340, 1343 (Miss. 1995) (*citing Hudson v. Rausa*, 462 So. 2d 689, 694 (Miss. 1984)). Further, "[c]ommon law qualified immunity has traditionally sought to protect the discretion of public officials so that those officials would not be deterred by the threat of suit from making decisions and formulating policies that are in the public good." *Womble*, 618 So. 2d at 1263.

¶26. The defendants in their motion for summary judgment claimed that their duties surrounding the baseball camp were discretionary as they furthered a public interest. In *Glover v. Donnell*, 878 F. Supp.898, 900 (S.D. Miss. 1995), the district court found the director of a summer program at Jackson State University to be cloaked by qualified immunity. The court determined that the program served a public interest and that his decisions relative to this program were discretionary entitling him to immunity. *Id.* at 900-01. Likewise, Zacharias, Polk, and Smith were engaged in hiring employees, and coordinating, and supervising the baseball program either directly or indirectly. The motion for summary judgment was correctly granted as Zacharias, Polk, and Smith were engaged in a discretionary activity that served a public interest. The Quinns' argument that qualified immunity was erroneously applied is without merit.

### II. ALTERNATIVELY, WHETHER THE TRIAL COURT ERRED IN NOT FINDING AN IMPLIED CONTRACT BETWEEN BRANDON QUINN AND MISSISSIPPI STATE UNIVERSITY.

¶27. The Quinns assert that an implicit contract existed between the plaintiffs and the defendants to provide baseball instruction safely at the defendant's baseball camp, and that the contract was breached. As authority for their position, the Quinns cite *Churchill v. Pearl River Basin Development District*, 19 So. 2d 900 (Miss. 1993), where a child who purchased a ticket to a water park developed by Pike County was found to have entered into an implied contract with the county and the development district such that they provide a premises which was safe for the enjoyment of water sports.

¶28. The Quinns paid a fee of $265 for their son to attend the baseball camp and receive instruction on how to improve his baseball skills. They analogize the case sub judice to *Churchill* and argue that the same type agreement exists, giving rise to an implied contract between the defendants, including MSU, and the Quinns. In *Churchill*, this Court stated the following:

[T]he appellees had charged Churchill's group an admission fee as well as a fee for renting an inner tube. The receipt of that fee promised not only admission to the water park, but also carried with it the **implied promise that the premises were safe** for the enjoyment of water sports. Accordingly, we find that there existed an **implied contract between the appellees and those who paid an admission fee** to use the water park facility.

*Churchill*, 619 So. 2d at 903 (emphasis added). "Sovereign immunity does not bar actions against the state or its political subdivisions brought on a breach of contract theory. *Id.* (citing *Mississippi State Dep't of Welfare v. Howie*, 449 So. 2d 772 (Miss. 1984); *Cig Contractors v. Mississippi State Bldg. Comm'n*, 399 So. 2d 1352 (Miss. 1981)).

¶29. The Quinns paid an "admission fee" to have their son, Brandon, attend the baseball camp at Mississippi State University. By doing so, they entered into an implied contract with the university. This contract carried with it the implied promise that the university would provide a safe instructional environment for the campers attending the baseball camp. This Court holds that when Brandon was hit in the mouth with the bat, the university breached its contract with the Quinns. Therefore, the suit against the university was not barred and was not ripe for summary judgment.

¶30. MSU does not admit or deny the existence of a contractual relationship between itself and the Quinns. The university argues that prior to participating in the baseball camp, the Quinns signed a document that acknowledged the risks associated with participating in the camp and agreed to accept those risks.[(5)](#) The Quinns respond that any release is a contract which requires a meeting of the minds of the parties and an injury prior to the execution of the release, neither of which existed prior to the injury sustained by Brandon. Therefore, the Quinns argue that the validity of the release is an issue of fact which should be determined at trial by a jury. This Court has held that a jury should be allowed to decide the issue of whether the release was obtained in good faith and with the full understanding on the plaintiff's part of his legal rights. *Smith v. Sneed*, 638 So. 2d 1252, 1261 (Miss. 1994)

(citing *Service Fire Ins. Co. of N.Y. v. Reed*, 220 Miss. 794, 72 So. 2d 197 (1954); *see also Willis v. Marlar*, 458 So. 2d 722 (Miss. 1984).

¶31. The university also asserts that Brandon assumed the risks of injury while participating in the camp by signing the release before the camp began. The Quinns state that to assume risks one must know what the risks are and willfully expose himself to those risks. Further they claim that the university would have to show that the Quinns did know the risks of the baseball camp.

¶32. In *Farragut v. Massey*, 612 So. 2d 325, 329 (Miss. 1992), we thoroughly discussed releases, their interpretation, and their validity. "[E]very person must be presumed to know the law, and in absence of some misrepresentation, or illegal concealment of facts, the person must abide the consequences of his contracts and actions." *Id.* (*quoting McCorkle v. Hughes*, 244 So. 2d 386, 388 (Miss. 1971). The Court in *Farragut* quoted from *Sumter Lumber Co. v. Skipper*, 183 Miss. 595, 608-09, 184 So. 296, 298-99 (1938), the following language:

The rules for the construction of deeds or contracts are designed to ascertain and to follow the actual or probable intention of the parties and are: When the language of the deed or contract is clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout, the court looks solely to the language used in the instrument itself, and will give effect to each and all its parts as written. When, however, the language falls short of the qualities above mentioned and resort must be had to extrinsic aid, the court will look to the subject matter embraced therein, to the particular situation of the parties who made the instrument, and to the general situation touching the subject matter, that is to say, to all the conditions surrounding the parties at the time of the execution of the instrument, and to, what as may be fairly assumed, they had in contemplation in respect to all such said surrounding conditions, giving weight also to the future developments thereinabout which were reasonably to be anticipated or expected by them; and when the parties have for some time proceeded with or under the deed or contract, a large measure, and sometimes a controlling measure, of regard will be given to the practical construction which the parties themselves have given it, this is on the common sense proposition that actions generally speak even louder than words.

*Farragut*, 612 So. 2d at 329.

¶33. The release signed by the Quinns does not mention acts of the instructor leaving the question: "Was such an act contemplated by the parties when they signed the release?" Naturally, the Quinns assert that no parent would cast reason to the wind and assume the risk that their child could be injured by an instructor at a camp where the child was supposedly receiving instruction on how to improve his baseball skills.

¶34. In construing the release against the university, the party who drafted it, we hold that reasonable minds could differ as to what types of risks the Quinns were assuming by signing the release. *Farragut*, 612 So. 2d at 330. *See **Leach v. Tingle***, 586 So. 2d 799, 801 (Miss. 1991) (ambiguities in contract should be construed against party who drafted the instrument). Even if the release was not ambiguous, the university would not be relieved of liability. Clauses that limit liability are given strict scrutiny by this Court and are not to be enforced unless the limitation is fairly and honestly negotiated and understood by both parties. *Farragut*, 612 So.2d at 330. A party can not use an anticipatory release to escape liability for tortious acts. *Id.* (*citing **Yazoo & Mississippi Valley R.R. v. Smith***, 90 Miss. 44, 43 So. 611 (1907)).

¶35. The university, understandably, was attempting to absolve itself of any liability by using a blanket anticipatory release signed by the camper and his family prior to attending the camp. This release, if interpreted according the university's viewpoint, would prevent a camper from recovering from any possible injury sustained while attending the baseball camp. Such a broad interpretation would be overreaching and allow unanticipated tortious acts to go without a remedy simply because a release had to be signed before a person could participate in an activity.

¶36. The language contained in the release could cause reasonable minds to differ as to what inherent risks of physical injury of a baseball camp really are. Is it an inherent risk of a baseball camp that an instructor might hit a camper with a baseball bat? Hopefully not; yet, events occur, as here, and some remedy must exist for such events. Otherwise, it is doubtful parents would send their children to such camps, no matter how good the instruction might be. A jury should have been allowed to determine

what the reasonable interpretations and contemplations of the parties were concerning the release.

### III. WHETHER THE STATUTE OF LIMITATIONS HAD RUN ON THE QUINNS' PERSONAL INJURY CLAIM.

¶37. The defendants set forth three statutes of limitations which they claim bar the action by the Quinns, §§ 11-46-11(3), 15-1-35 and 15-3-1 of the Mississippi Code Annotated. The Quinns note that the version of of § 11-46-11(3) that was in effect at the time of the injury provided for a two-year period in which to bring suit. The Quinns' complaint was timely filed and not barred by this section. The defendants next assert §15-1-35, which deals with intentional torts, bars the claim because the suit was brought more than one year after the injury. The Quinns have never claimed Brandon suffered from an intentional tort. Rather, their claim is and was based on a theory of negligence or, alternatively, implied contract. We have determined that §15-1-35 is not applicable and does not bar the Quinns' suit.

¶38. The defendants next cite §15-3-1, which pertains to certain contracts that must be in writing. This section deals with contracts that must come within the Statute of Frauds in order to be enforceable. The provisions in this statute do not apply to the case sub judice.

¶39. Finally, the defendants raise §11-46-7(1) as a bar to the suit filed by the Quinns. This section is part of the statutory law on sovereign immunity set forth by the Mississippi Legislature. However, this statutory section only applies to claims arising on and after October 1, 1993. The Quinns' cause of action became ripe to bring a claim on the date Brandon sustained his injury, which was June 22, 1992. Therefore, §11-46-7(1) is not applicable to the case before this Court.

### CONCLUSION

¶40. The suit brought against MSU by the Quinns on the theory of negligence is barred by the doctrine of sovereign immunity, as the injury was sustained prior to *Presley*. This Court has held that *Presley* is only to be applied prospectively, which means that the Quinns' claim is viewed under the common law recognizing sovereign immunity. Dr. Zacharias and Coaches Polk and Smith were entitled to qualified immunity because they were acting in a discretionary capacity in furtherance of a public interest (running a baseball camp). Therefore, the trial court correctly granted the defendants' motion for summary judgment based on the negligence claims being barred because of sovereign and qualified immunity. However, the lower court was in error in granting summary judgment on the alternative claim of an implied contract between defendant MSU and the Quinns. We hold, with reference to the implied contract and release, that there are genuine issues of material fact to which reasonable minds could differ. These issues should have been presented to a trier of fact. Therefore, this case is reversed and remanded for a trial on the merits dealing only with the issues of the implied contract and the release with only the defendant, MSU.

¶41. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PRATHER, C.J., PITTMAN, P.J., AND SMITH, J., CONCUR. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY**

**SULLIVAN, P.J., AND McRAE, J. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY BANKS, J. MILLS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. WALLER, J., NOT PARTICIPATING.**

### BANKS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶42. I join the result reached by the majority except insofar as it applies qualified immunity to defendants Ron Polk and Steve Smith.

### I.

¶43. As to the tardy affidavits, such as they are, that is mere affirmations of that which is contained in the complaint, I agree with the result reached by the majority for several reasons.

¶44. First, there was no answer filed and, therefore, the allegations of the complaint, at least to the extent that they are not directly contradicted by defendant movant's affidavits must be considered true for purposes of the motion before the trial court.

¶45. This was a Rule 12(b) (6) motion treated as a motion for summary judgment because supporting affidavits were filed. The motion was not scheduled for hearing at a time certain when it was filed. On the same day the defendants filed a motion for protective order seeking relief from the requirement that an answer be filed and the prohibition of any discovery. That motion was not notice for hearing on a date certain. Later the court set both motions for hearing on the same day. It was at that time that the court entered an order prohibiting discovery and granting respondents thirty days in which to file a brief. It would be patently unfair to prevent a respondent from engaging in any discovery, whatever, and then deny them the right to file even their own generic affidavits in support of a complaint which has never been answered.

¶46. Finally, the trial court allowed the affidavits and it is in the best position to ascertain the intent of its order allowing additional time in which to file a responsive brief.

¶47. For these reasons, I agree with the resolution of this issue arrived at by the majority.

### II.

¶48. In my view, the majority correctly concludes that our decision in *Churchill* precludes the application of sovereign immunity to bar a suit against Mississippi State University. I also agree to await further factual development of the issue of the "release" even though on the face of it, immunizing one prospectively for acts of negligence hardly appears to comport with our public policy. *F. L. Cappaert v. Junker*, 413 So. 2d 378 (Miss. 1982).

¶49. I part company with the majority on its treatment of the qualified immunity issue. While Dr. Zacharias' affidavit together with what would normally be associated with the position that he holds should sustain summary judgment in his favor, I fail to see how those who are in direct control of the summer baseball program can be deemed *ipso facto* to be operating in the "public interest" such that

they enjoy qualified immunity. I cannot accept assertion that all that is required is the exercise of discretion in an activity which is in the public interest for the assertion of qualified immunity. If that were the case every government-employed garbage truck driver who decides to drive at an excessive speed for the conditions but within the speed limit is cloaked with such immunity as long as he is picking up garbage. Indeed, every public employee acting within the course and scope of his duties acts in pursuit of the public interest and acts with some degree of discretion. The public interest and discretion are not sufficient to invoke qualified immunity. *Womble v. Singing River Hosp.*, 618 So. 2d 1252 (Miss. 1993).

¶50. In *Womble* we restored the doctrine of qualified immunity to its historical common law limits. That is, it applies to discretionary decisions which "involve the formulation and implementation of public policy." *Id.,* at 1265. We jettisoned the broader immunity rationale earlier adopted specifically for medical practitioners. *See Marshall v. Chawla,* 520 So. 2d 1374, 1377 (Miss. 1988).

¶51. For all that appears here, no decision made by defendants Polk or Smith involved the formulation or implementation of public policy. What this is about is the operation of a summer baseball camp, possibly for profit. Neither defendant has the discretion to operate it in an unsafe manner. While each of them may well be entitled to summary judgment on some other grounds after discovery, they are not, in my view, entitled to qualified immunity on the face of what is before the court. *See T. M. v. Noblitt,* 650 So. 2d 1340, 1345 (Miss. 1995) (recognizing that a public employee in a policy-making role may be immune for some acts and not for others and remanding the matter for development of the evidence). I would reverse the judgment as it applies to these defendants.

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**


### McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶52. While I agree with the majority that summary judgment in favor of the University on the contractual theory was erroneous, I would continue by finding that Mississippi State University was not barred by sovereign immunity from being sued on tort claims. I further would find that twelve-year-old Brandon Quinn could not be bound by his signature on the release. To the majority's treatment of these two issues, I must respectfully dissent.

¶53. In breach of contract actions brought against the state or its political subdivisions, sovereign immunity will not act as a bar. *Churchill v. Pearl River Basin Dev. Dist.*, 619 So. 2d 900, 903 (Miss. 1993). It is without question that the University entered into an implied contract with the Quinn family when the Quinns paid a fee to have Brandon attend the baseball camp at Mississippi State University. The University breached its promise to provide a safe environment when Brandon and other youths entered the camp, and for the breach of this promise, the Quinns were entitled to sue.

¶54. Furthermore, the Quinns' negligence claims are not barred by sovereign immunity. Once again, this Court is faced with the vexation of prospective application of our decision in *Presley v. Mississippi State Highway Comm'n*, 608 So. 2d 1288, and once again, I vigorously disagree with such application. The notion that *Presley* must be applied prospectively is not only inaccurate, but also imprudent, as I have previously stated. *See Coplin v. Francis*, 631 So. 752, 757 (Miss. 1994)

(McRae, J., dissenting). The majority relies on **Robinson v. Stewart**, 655 So. 2d 866, 868 (Miss. 1995), to say that this Court decided that **Presley** was to be applied prospectively only. However, as then-Justice Sullivan correctly noted, we concluded in **Churchill** that the plurality vote to apply **Presley** prospectively had no precedential value. **Robinson**, 655 So. 2d at 872 (Sullivan, J., dissenting). Unfortunately, the majority's decision to apply **Presley** prospectively in the case sub judice again misconstrues this Court's prior rulings.

¶55. I also respectfully take issue with Justice Mills's reliance on the legislative intent of the Sovereign Immunity Act, as stated in 1996, which purports to provide that immunity for the state and its political subdivisions has always been the law of Mississippi. However, we have already determined that this is not so. "What is important is that the Legislature has repeatedly postponed the effective date, so that the [Tort Claims] act--save only its reenactment of pre-**Pruett** immunity law-- has been and remains law in futuro, law that has never acquired a present force." **Starnes v. City of Vardaman**, 580 So.2d 733, 735-36 (Miss.1991). *See also* **Stokes v. Kemper County Bd. of Supervisors**, 691 So. 2d 391, 396-97 (Miss. 1997) (McRae, J., concurring in part and dissenting in part) (detailing history of legislative enactments that postponed implementation of recovery parameters for tort suits against the state). Therefore, the true effect of these laws was that no sovereign immunity existed. The incident in this case occurred on June 22, 1992, and the statute in place on that date postponed the effective date of the act, thus failing to create a basis for sovereign immunity.

¶56. This Court should not allow sovereign immunity to reach back and apply to incidents occurring over ten years ago after the Legislature has effectively delayed any implementation of statutes allowing suits to be filed. Using this logic, any person who was injured during the period of delay would be barred by the statute of limitations when the statutes providing for suits was finally implemented. Therefore, for the purposes of these delays, the statute of limitations for the time to file suits against the state, under the statute that allows recovery to a certain level, must be tolled to comport with the Remedy Clause of our Mississippi Constitution.

¶57. The fact that a release was signed does not abrogate the University from responsibility for young Brandon's injuries. Neither Brandon nor his father can be held to a release from liability for prospective, unspecified injuries. Moreover, a twelve-year-old cannot be found to have signed a release with a full understanding of his legal rights. For more than a century, we have zealously protected the rights of minors and held that they cannot waive any of their rights. **Price v. Crone**, 44 Miss. 571 (1871). *See also* **Khoury v. Saik**, 203 Miss. 155, 162, 33 So. 2d 616, 618 (1948)(for purposes of service of process, "minors can waive nothing. In the law they are helpless, so much so that their representatives can waive nothing for them."). For this reason, we allow only those over the age of eighteen to enter into contracts. Miss. Code Ann. § 93-19-13 (1972).

¶58. In conclusion, the majority has further confounded our once-clear abrogation of judicially created sovereign immunity. The rationale from **Presley** must be applied retroactively, and since the majority refuses to do so, I must respectfully dissent.

**BANKS, J., JOINS THIS OPINION IN PART.**


**MILLS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶59. While I concur with the majority's decision affirming summary judgment in favor of Mississippi State University on the tort claim, I dissent from the reversal and remand of the case for a trial on the issue of breach of implied contract. The same sovereign immunity that bars the Quinns' tort claim against MSU bars their breach of implied contract claim as well.

¶60. In *Pruett v. City of Rosedale*, 421 So. 2d 1046, 1051-52 (Miss. 1982), we abolished judicially-created sovereign immunity, ruling that determining the existence and extent of sovereign immunity is the province of the Legislature, not the Court. The declaration of legislative intent of the Sovereign Immunity Act provides that "[t]he immunity of the state and its political subdivisions recognized herein is and always has been the law in this state, before and after November 10, 1982, and before and after July 1, 1984." Miss. Code Ann. § 11-46-3(2) (Supp. 1996). Accordingly, even after our decision finding § 11-46-6 to be unconstitutional in *Presley v. Mississippi State Hwy. Com'n*, 608 So. 2d 1288 (Miss. 1992), we have stated that "the Immunity Act, Miss. Code Ann. § 11-46-1 *et seq.*, has continually protected the state against suit." *Robinson v. Stewart*, 655 So. 2d 866, 869 (Miss. 1995) (citing *Richardson v. Rankin County Sch. Dist.*, 540 So. 2d 5, 8 (Miss. 1989)). Therefore, irrespective of the prospective-only application of *Presley* as to § 11-46-6, the state and its political subdivisions "are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity on account of any wrongful or tortious act or omission **or breach of implied term or condition of any warranty or contract.**" Miss. Code Ann. § 11-46-3(1) (Supp. 1996) (emphasis added). There can be little doubt that this immunity bars the Quinns' breach of implied contract claim against MSU. For this reason, I would affirm the circuit court judgment below.

1. A copy of the document is attached as Appendix "A".

2. The affidavits submitted by the Quinns used the same verbatim language and was signed by Gayra, Brandon, and Mike. The affidavits read as follows:

> I hearby swear or affirm that the facts and allegations set forth in the complaint in this cause are true and correct to the best of my information and belief.

3. BY THE COURT: Thank you, gentlemen. Mr. Haley has submitted to the Court a written brief. There's been no--since he's furnished a copy of that to you today, there's been no response, no written response from you, Mr. Sweat, nor did I expect that there would be. Should you desire to do that, I will give you an opportunity to respond to that brief if you desire to do so.

BY MR. SWEAT: Your Honor, I will do that since I just got this copy.

BY THE COURT: How many days do you want to respond?

BY MR. SWEAT: If I could have a week, your Honor.

BY THE COURT: Plaintiff will have thirty days from today's date to respond to that--to that brief by submitting to the Court a written brief on his position on the matters. . .

4. Rule 7(a) of the Mississippi Rules of Civil Procedure provides under the heading of "pleadings" that there is to be a complaint and an answer.

5. This release was signed by Mike Quinn, Brandon's father, and Brandon Quinn.